GILBERT D. HEDDEN, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 79623, 79624, 79625, 79626, 79965, 79966.

Promulgated June 21, 1938.

---

[1] Proceedings of the following petitioners are consolidated herewith: Gilbert D. Hedden, Transferee; Andrew M. Conneen, Jr.; Andrew M. Conneen, Jr., Transferee; Hattie S. Hedden, Transferee; Gertrude S. Hedden, Transferee.

*Ernest C. Lum, Esq.*, and *William Ristig, Esq.*, for the petitioners.
*J. R. Johnston, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $99,081.30 in income tax due from the Anconged Co., formerly the Hedden Iron Construction Co., for the calendar year 1931. He then determined that the petitioners are liable as transferees of the assets of that taxpayer. All of the facts in the record have been introduced by a stipulation. The Board hereby finds that the facts are as stipulated. The first and principal question for decision is whether the gain realized from the transfer of substantially all of the assets of the Hedden Iron Construction Co., hereinafter called Hedden, to two corporations nominated by the Bethlehem Steel Corporation, hereinafter called Bethlehem, in exchange for the latter's bonds and cash, should be recognized for tax purposes.

Hedden was engaged in the iron business. It granted to Bethlehem, or the nominee or nominees of Bethlehem, an option to acquire substantially all of its assets in exchange for $1,250,000 par value of the 4½ percent serial gold bonds of Bethlehem and $16,400 in cash. Bethlehem exercised the option on April 23, 1931. Bethlehem directed that all of the real estate of Hedden in New Jersey be conveyed to the Union Iron Works Co., and all of the other property of Hedden be conveyed to the McClintic-Marshall Co. The Union Iron Works Co. and McClintic-Marshall Co. were wholly owned subsidiaries of Bethlehem and were named by Bethlehem as its nominees under the option. Bethlehem set up on its books accounts receivable and notes receivable from these two subsidiaries for all of the assets transferred to them. Hedden received the bonds and cash. It then sold $410,000 par value of the bonds to another subsidiary of Bethlehem for $410,000 in cash, and distributed the remaining bonds and the $410,000 in cash to its stockholders. It changed its name to "Anconged Company," and later was dissolved on July 13, 1931. All of these steps were pursuant to the plan as set forth in the original offer and acceptance. Hedden and Bethlehem stated in those papers that they desired to be and desired the other to be a party to a reorganization which would result from the transfer of the properties of Hedden. The parties have agreed that the petitioners are transferees of Hedden and they have also agreed upon the amount of the transferee liability of each in case a gain to Hedden is recognized.

The petitioners contend that the gain realized by Hedden is not recognized. They argue that both Hedden and Bethlehem were parties to a reorganization, the exchange would be within the provisions of section 112 (b) (4) of the Revenue Act of 1928 except that cash was received, but the cash was distributed pursuant to the plan of reorganization and, therefore no gain to the corporation shall be recognized from the transaction. A reorganization, they say, resulted from the fact that Bethlehem acquired substantially all of the properties of Hedden.

The Commissioner contends that the gain of Hedden must be recognized in its entirety. He argues that there was no reorganization, since no corporation acquired substantially all of the properties of Hedden and, even if there was a reorganization, Bethlehem was not a party to it because the properties of Hedden were acquired, not by Bethlehem, but by the Union Iron Works and McClintic-Marshall Co. He argues further that the bonds of Bethlehem which were transferred to Hedden do not preserve a sufficient continuity of interest, i. e., the bonds were the bonds of Bethlehem, whereas the properties in which Hedden and its stockholders were formerly interested were thereafter owned, not by Bethlehem, but by the two other corporations. This case can not be satisfactorily distinguished from cases cited by the respondent, namely, *Groman* v. *Commissioner*, 302 U. S. 82; *Helvering* v. *Bashford*, 302 U. S. 454; and *A. W. Mellon*, 36 B. T. A. 977. We hold upon authority of those decisions that this case does not fall within any of the exceptions to the general rule of section 112 (a), and it follows that the entire amount of the gain of Hedden shall be recognized.

The case of *Schuh Trading Co.* v. *Commissioner*, 95 Fed. (2d) 404, decided by the Circuit Court of Appeals for the Seventh Circuit, has been called to our attention. The facts in that case are almost, if not quite, parallel to the facts in the present case. The Circuit Court attempted to distinguish the *Groman* case because in the *Groman* case the corporation (Ohio) to which the stock of Indiana was transferred, was not called a "nominee" of Glidden, and upon the further ground that Glidden had transferred nothing to the shareholders of Indiana. The Circuit Court may have been unaware that the statement in the *Groman* case to the effect that Glidden transferred nothing to the shareholders of Indiana was deleted from the *Groman* opinion on December 6, 1937. There were "nominees" in the *Mellon* case. We respectfully decline to follow the opinion of the Circuit Court in the *Schuh* case because we can not distinguish it from the *Groman* and *Bashford* cases.

The parties have stipulated that Hedden's basis for gain or loss on the assets transferred was $421,193.28. The petitioners have contended that the bonds of Bethlehem had no fair market value at

the time they were received. They had the burden of proof on that issue and failed to introduce any evidence to show that the bonds were not worth their face value. The evidence, on the contrary, indicates that the bonds were worth their face value. The Commissioner correctly determined the amount of the gain to Hedden.

The petitioners made the further contention that Hedden was entitled to report its gain under section 44 (b). That section, relating to the installment method of reporting gains, does not afford the petitioners any relief. Sufficient reason for this statement is found in section 44 (d). Hedden disposed of the bonds immediately after it received them by distributing them to its stockholders. Section 44 (d) provides that if an installment obligation is distributed, gain or loss shall result to the extent of the difference between the basis of the obligation and its fair market value at the time of the distribution. This would result in exactly the same gain for 1931 that would result if the installment basis were not used. Thus, all of its gain had to be reported in 1931.

The Commissioner also determined deficiencies in the income taxes of Gilbert D. Hedden and Andrew M. Conneen, Jr., for 1931. The parties have entered into stipulations which will dispose of those proceedings.

*Decisions will be entered under Rule 50.*