*231 OPINION.
Kern:
The respondent has determined a deficiency of $28,493.86 in the income tax of petitioner and its affiliated companies for the calendar year 1930, pursuant to article 16 (a) of Regulations 75, set *232 out in the margin,[1] on the theory that the exchange of the assets of petitioner and the Whitney Brothers Co. (Brothers) for the stock of the Merritt-Chapman & Whitney Corporation (New) and the later exchange of this New stock with the Merritt-Chapman & Scott Corporation (Scott) were, in effect, a sale, and, not being within the nonrecognition provisions of section 112 of the Revenue Act of 1928, the resulting gain is taxable.
The petitioner contends that Brothers, although a subsidiary of petitioner, may be a party to a reorganization independent of its parent, and was a party to a reorganization within the meaning of sections 112 (b) (3) and/or 112 (b) (4) and 112 (i) (1) (A) of the Revenue Act of 1928, set out in the margin,[2] and consequently that *233 no gain or loss was recognizable on receipt by Brothers of the capital stock of either New or Scott in exchange for substantially all of Brothers’ assets. In the alternative it is urged that if gain or loss is recognizable on the exchange of Brothers’ assets for the capital stock of either New or Scott, the amount of such gain or loss can not be determined in the year 1930, because it was not known in that year what would be the precise number of shares of Scott which Brothers would receive in consideration for its assets.
1. We shall deal first with the question whether the nonrecognition reorganization provisions apply. The more salient facts may be presumed to afford a clear picture of the transaction. The petitioner, in 1930, was a holding company which owned all the capital stock of its two subsidiaries, Brothers and Materials, which were engaged in the marine contracting business. Gwin A. Whitney was president of all three corporations and a major shareholder of petitioner, with substantially all the rest of its stock being held by his family connections. Scott was an entirely distinct corporation, resulting from several old constituent companies, and was anxious to acquire a marine contracting business in the Great Lakes region. After some discussion a plan was drawn up by Whitney and Scott by which Brothers was to dispose of its gravel business to Materials, and petitioner was to do the same; and Brothers was then to transfer all its remaining property relating to the marine contracting business and its good will to a new company to be organized, the Merritt-Chapman & Whitney Corporation, in exchange for 4,800 shares of the new company’s common stock, the remaining 2,700 shares of the total of New’s 7,500 shares to go to petitioner. The next step was for Brothers to exchange its 4,800 shares of New for 10,000 shares of common and 2,500 shares of preferred of Scott’s stock and then to dissolve, petitioner at the same time exchanging its 2,700 shares of New stock with Scott for cash. This plan was set out in an agreement of October 17, 1930, between Gwin A. Whitney and Scott, and its supplements of December 1 and 19, 1930. Certain intercompany transfers between Brothers and petitioner took place before the exchange with New and with Scott. In these transfers Scott had no interest. The plan, as outlined, was carried out in substance, including the transfer of certain assets by petitioner to New not specifically mentioned in the plan. Part of these assets had been received by petitioner from Brothers in the intercompany transfers. Brothers did not transfer all its assets to New but retained cash in excess of liabilities .in the amount of $25,300, and about the same amount of accounts receivable and debts. It had transferred directly to New $126,000 of assets, and including those transferred through petitioner, $211,000. Petitioner, after its transfer to New, still held about 40 *234 percent of its original total assets, not including its shares of stock of Brothers. Brothers, after the transfer, continued to exist, but did no business beyond holding the Scott stock and its other assets.
Respondent, in his deficiency notice, treated the several transactions as severable, holding that gain from the transfers of assets by petitioner and its wholly owned subsidiary Brothers to New in exchange for all the issued stock of that company was nonrecognizable under section 112 (b) (5), but that the second transfer by petitioner and Brothers of New’s stock so received to Scott for the latter’s stock resulted in recognizable gain, since New was not dissolved and petitioner and its subsidiary, Brothers, were not, after the second transfer, in control of Scott.
Respondent now contends that the transaction was a sale of assets by petitioner and Brothers for cash, notes, and stock, and the gain is therefore recognizable under section 112 of the Revenue Act of 1928; that the plan, as adopted and carried out, does not fall within the statute; and that, even if it should be held within the statute, the corporate entities of petitioner and Brothers should be ignored and a taxable profit found.
We may assume that the transfers of assets by petitioner and its subsidiary Brothers to New in exchange for New’s stock would be a reorganization within the meaning of the statute. However, the “plan of reorganization” contemplated more. Pursuant to its terms, petitioner exchanged its stock in New with Scott for cash and notes, and Brothers exchanged its stock in New with Scott for Scott’s stock in an amount which represented only a small percentage of the total stock of Scott then outstanding. This occurred December 30, 1930, on the same day petitioner and Brothers had acquired the stock of New. It is obvious that these were all steps in one transaction. As a result of the entire transaction, petitioner had transferred certain of its assets to New and held, on December 30, 1930, cash and notes of Scott, and Brothers had transferred certain of its assets to New and held stock in Scott, which, in turn, held all of the outstanding stock of New.
There is no question but that the cash and the notes held by petitioner are taxable to the extent of the gain realized, the latter at their fair market value, as found by us in the findings of fact. This part of the transaction would fall within the general taxing provision of section 112 (a) of the Revenue Act of 1928 as a sale; and even if the cash had been combined with property permitted to be exchanged without tax recognition, the cash would still be taxable *235 under section 112 (c) (1), set out in the margin.[3] As to whether the stock of Scott acquired by Brothers is taxable, we think this question has been decided by the Supreme Court of the United States in the case of Groman v. Commissioner, 302 U. S. 82, the opinion in which was handed down subsequent to the submission of this case. Under the authority of that decision and the decision in Helvering v. Bashford, 302 U. S. 454, it is our opinion that Scott was not a party to any reorganization and that the receipt of its stock by Brothers was the occasion for computation of taxable gain within the meaning of section 112 (a) of the Revenue Act of 1928, set out in the margin.[4] As those cases demonstrate, the proper test of whether a corporation is a “party to a reorganization” is to be found in the continuity of interest which the shareholders of one corporation have after the exchange in the second corporation. The transfer of assets by petitioner and Brothers to New in exchange for New’s stock, and the immediate transfer by petitioner and Brothers of New’s stock so received to Scott in exchange, respectively, for cash and notes, and for Scott’s stock, resulted in no continuity of interest in Scott. Brothers parted with its assets, and as the result of the reorganization plan received Scott’s stock, but the latter did not represent in any way the old assets which remained in Scott’s subsidiary, New. The continuity of interest must be material and permanent. Helvering v. Bashford, supra. Cf. Gilbert D. Heddin, 37 B. T. A. 1082; Note 51 Harv. L. Rev. 893. The same result would follow as to Scott’s stock in Brothers’ hands, even if Brothers had retained a portion of New’s stock received on the first stage of the transaction, for the situation would then be precisely that considered in the Groman and Bashford cases, Scott’s stock being “other property” within the meaning of section 112 (c) (1), and, as such, recognizable for tax purposes.
On this point we must hold for respondent.
2. The only remaining question is whether the transaction was closed in 1930 so as to render any gain realized by petitioner or *236 Brothers determinable in that year. Petitioner contends that the provisions of the agreement with Scott, by which 1,667 shares of the former’s preferred stock were placed in escrow at the time of the exchange in 1930 as security for Gwin A. Whitney’s guaranty of the minimum earnings of the New company for the period ended December 31,1931, make the gain completely uncertain in that year and not determinable until 1932. The fair market value of Scott preferred stock has been stipulated and is covered by our findings. It is true that 520 shares of this stock had to be returned ultimately by Brothers for failure to meet the guaranty in full, but this does not affect the gain realized in 1930. At most, it would result in a loss in the later year. The stock was issued to Brothers, and in its name, and any dividends payable by reason of its ownership would have gone to Brothers. We think that Commissioner v. Darnell, Inc., 60 Fed. (2d) 82, relied on by petitioner, is distinguishable on its facts, and that the situation is ruled in respondent’s favor by our decisions in Federal Development Co., 18 B. T. A. 971, and Luther Bonham, 33 B. T. A. 1100; affd., 89 Fed. (2d) 725. Cf. North American Oil Consolidated v. Burnet, 286 U. S. 417.

Judgment will he entered under Rule 50.

 Am. 16. — Parent Agent foe Subsidiaries.

(a) Scope of Agency of Parent.

Except as provided in paragraphs (S) and (c) of this article (relating to the effect of the withdrawal of a.subsidiary or the dissolution of the parent)—
The parent corporation shall be for all purposes, in respect of the tax for the taxable year for which a consolidated return is made or is required, the agent of each corporation which during any part of such year was a member of the affiliated group, duly authorised in the name of the parent to act for and represent each such corporation in all matters relating to such tax; the parent corporation shall be the sole agent for such corporations in such matters; and such corporations shall not have authority to act for or represent themselves in any such matter. For example, ail correspondence will be carried on directly with the parent; deficiency letters will be mailed only to the parent, and the mailing to the parent shall be considered asa mailing to each such corporation; the parent will file petitions and conduct proceedings before the Board of Tax Appeals, and any such petition shall be considered as having also been filed by each such corporation; the parent will file claims for refund or credit; refunds will be made directly to and in the name of the parent and will discharge any liability of the Government in respect thereof to any such corporation; and the parent in its name will give waivers, give bonds, and execute closing agreements, offers in compromise, and all other documents, and any waiver or bond so given, or agreement, offer in compromise, or any other document so executed, shall be considered as having also been given or executed by each such corporation. Notwithstanding the provisions of this paragraph, however, any deficiency letter, in respect of the tax for a consolidated return period, will name each corporation which was a member of the affiliated group during any part of such period, any assessment (whether of the original tax or of a deficiency) will be made in the name of each such corporation (but a failure to include the name of any such corporation will not affect the validity of the deficiency letter or the assessment as to the other corporations) : and any notice or demand for payment, any distraint (or warrant in respect thereof), any levy (or notice in respect thereof), any notice of a lien, or any other proceeding to collect the amount of any assessment, after the assessment has been made, will name the corporation from which such collection is to be made. The provisions of this paragraph shall apply whether or not a consolidated return is made for any subsequent year, and whether or not one or more subsidiaries have become or have ceased to be members of the group at any time (but see paragraph (¾), of this article).

 SEC. 112. RECOGNITION OF GAIN OR LOSS.
*******
(b) Exchanges solely in hind.—
*******
(3) Stock foe stock on reorganization. — No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.
(4) Same — Gain of corporation.' — No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.
*******
(i) Definition of reorganization. — As used in this section and sections 113 and 115—
(1) the term “reorganization” means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), * * *

 SBC. 112. RECOGNITION OE GAIN OR LOSS.
* * ⅜ * * * *
(e) Gain from exchanges not solely in leinS,.—
(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

 SEC. 112. RECOGNITION OB GAIN OR LOSS.
(a) General rule. — upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.