## The United Light and Power Company, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 77404.   Promulgated September 8, 1938.

*Homer Hendricks, Esq., Park Chamberlain, Esq.,* and *Thomas K. Humphrey, Esq.,* for the petitioner.

*F. R. Shearer, Esq.,* for the respondent.

OPINION.

MURDOCK: The parties are now in agreement as to all figures. The gain, if any is to be recognized, is $3,509,567.68 in the Detroit Edison Co. stock transactions and $6,824,892.47 in the Brooklyn Borough Gas Co. stock transactions. The petitioner contends that the transfer of the Detroit Edison shares to Dexter was a separate complete transaction; the transfer of the Dexter stock was another separate complete transaction; and the first was a nontaxable reorganization under the provisions of section 112(i)(1)(B),[2] (b)(4),[3] and (b)(5)[4] of the Revenue Act of 1928, while the second was a nontaxable reorganization under the provisions of section 112(i)(1)(A)[5] and (b)(3).[6] It makes similar contentions in regard to the transactions relating to the disposition of the Brooklyn Borough Gas stock. The soundness of these arguments depends upon whether Railways ever had "control"[7] of Dexter, or of American, and upon whether the stock of American received by Railways was stock of a corporation, a party to a reorganization, or was "other property" as that term is used in section 112. These questions, in turn, depend largely upon whether the transactions are to be regarded as independent exchanges or as interdependent steps in one integral plan or transaction.

The Commissioner first contends that these transactions were not separate and complete in themselves for income tax purposes, but were mere interdependent steps in carrying out an integral plan.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or * * *.

[3] (b) *Exchanges solely in kind.*—

(4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

[4] (5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

[5] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or * * *.

[6] (b) EXCHANGES SOLELY IN KIND.—

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

[7] "Control" is defined in section 112 (j) as the ownership of at least 80 per centum of voting stock and at least 80 per centum of all other classes of stock of a corporation.

He insists that the plan must be viewed as a whole. If it is so viewed, then Railways never had control of the Dexter stock because Railways received the stock subject to a preexisting binding contractual obligation to transfer that stock to American, and, furthermore, Railways had not the necessary continuity of interest in the Detroit Edison Co. stock. That stock went to Dexter, in which Railways, upon final consummation, had no direct interest, but only an indirect interest through the ownership of the stock in American. The result is that American was not a party to a reorganization and its stock received by Railways was "other property", the receipt of which was a recognized gain. The most recent court and Board decisions support this contention of the Commissioner.

The decision of this case need not depend upon whether the use of Dexter and the ten A to J corporations had some real business purpose, as the petitioner contends, or whether the use of those corporations was merely to avoid the tax consequences of more direct transfers. The former alternative may be assumed to be the correct one. Furthermore, the facts, which the Board deems material to a proper decision, are not subject to any serious dispute between the parties. The ownership of the Dexter stock by Railways was transitory and incident to a plan which required its immediate transfer. That transfer was not an independent transaction but was an essential part of the plan. This circumstance distinguishes the present case from some others cited by the petitioner in which there was control immediately after the integral plan had been completed, but that control was then dissipated by a separate subsequent contract and transfer. Control is determined as of the completion of the integral plan. Railways did not have control of Dexter when the interdependent transfers were completed, since it did not own a share of Dexter stock. Nor did it control American. The transfer of property (Detroit Edison Co. stock) by Railways to the American group must be viewed as a whole. "For income tax purposes the component steps of a single transaction can not be treated separately", Bassick v. Commissioner, 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592, affirming 30 B. T. A. 163; Prairie Oil & Gas Co. v. Motter, 66 Fed. (2d) 309; West Texas Refining & Development Co. v. Commissioner, 68 Fed. (2d) 77, affirming on this point, 25 B. T. A. 1254; Ahles Realty Corporation v. Commissioner, 71 Fed. (2d) 150; certiorari denied, 293 U. S. 611; Hazeltine Corporation v. Commissioner, 89 Fed. (2d) 513, affirming 32 B. T. A. 110, on this point; Schumacher Wall Board Corporation, 33 B. T. A. 1211; affd., 93 Fed. (2d) 79; Helvering v. Bashford, 302 U. S. 454; Paul L. Case, 37 B. T. A. 365; George Whittel & Co., 34 B. T. A. 1070. Railways parted with some of its property and came out with

some American stock, while American received all of the stock of Dexter and Dexter received the property. American received none of the property originally owned by Railways. Although Railways owned some American stock, American owned all of the Dexter stock and Dexter owned the property formerly owned by Railways, nevertheless Railways did not maintain a sufficient continuity of interest in the property (Detroit Edison Co. stock). Railways and American did not merge or consolidate. Neither acquired a majority of the voting stock or substantially all of the assets of the other. Neither was in control of the other. American was not a party to any reorganization material to the decision of this case, and its stock received by Railways was "other property." Thus the entire gain of Railways is recognized under section 112(a), since none of the exceptions apply. *Helvering* v. *Bashford, supra; Groman* v. *Commissioner*, 302 U. S. 82; *A. W. Mellon*, 36 B. T. A. 977; *Gilbert D. Hedden*, 37 B. T. A. 1082; *Whitney Corporation*, 38 B. T. A. 224.

The petitioner argues strenuously that the above cited cases are distinguishable on their facts and are not in point in principle. It also argues that the *Whitney* case was incorrectly decided and was not like the *Bashford* and *Groman* cases. These arguments might be difficult to answer were we not obliged to look at these transactions as all a part of one plan. Although the parent company in the *Bashford* and *Groman* cases received the stock of its subsidiary from the subsidiary, while here American received the stock of its new subsidiaries from Railways, still in the end the result was the same in all three cases in that the transferor had no direct interest in the corporation receiving the property which was transferred. If the continuity of interest test is to be applied upon the consummation of the integral plan, then the cited cases are in point.

The petitioner cites and relies upon *Ballwood Co.* v. *Commissioner*, 84 Fed. (2d) 733, and *Independent Oil Co.*, 35 B. T. A. 32. Those cases were decided prior to the decisions of the Supreme Court in the *Bashford* and *Groman* cases and, in case of conflict, the latter are, of course, controlling. But it is not necessary to overrule the *Independent Oil Co.* case or to say that we will not follow the *Ballwood* case, since there are important differences between the facts in those cases and the facts here which may serve to distinguish the cases. No general principle is stated in either of those cases which is contrary to the reasoning of this opinion.

The transactions whereby Railways disposed of Brooklyn Borough Gas Co. stock and ultimately received American stock are not more favorable to the petitioner but, if different, are less favorable to the petitioner. Under the principles and authorities above discussed, the full gain of Railways from those transactions was subject to tax. The difference is that here, when the plan was complete,

Railways had a much less direct interest in the Brooklyn Borough stock (which went through the ten A to J New Jersey companies to ten Delaware companies owned by Koppers) than it had in the Detroit Edison stock. Since the full gain of Railways from both dispositions was subject to tax, the other arguments of the respondent need not be discussed.

*Decision will be entered under Rule 50.*