**COMMISSIONER OF INTERNAL REVENUE v. DANA.**

**No. 6766.**

Circuit Court of Appeals, Third Circuit.

March 28, 1939.

---

[3] Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for petitioner.

Benjamin Mahler, of New York City, for respondent.

Before DAVIS, MARIS, and BUFFINGTON, Circuit Judges.

DAVIS, Circuit Judge.

The commissioner determined that there was a deficiency of $125,534.97 in the income taxes of Charles A. Dana, taxpayer, for the year 1929. The taxpayer thereupon filed a petition for review with the Board of Tax Appeals which, on June 11, 1937, filed its opinion (36 B.T.A. 97) in which it found that the commissioner had "erred in determining the above deficiency". From the order of redetermination entered thereon, the commissioner appealed to this court.

The question involved is whether or not the Spicer Manufacturing Company, hereinafter called Spicer, and the Salisbury Axle Company, hereinafter called Salisbury, were parties to a reorganization within the meaning of section 112(i) of the Revenue Act of 1928, 26. U.S.C.A. § 112 note.[1]

If they were, any "gain" realized by the taxpayer when he exchanged stock in Salisbury for stock in Spicer is not to be "recognized" in computing his taxable income and there was no deficiency, for section 112(b) (3) of the Act, 26 U.S.C.A. § 112 (b) (3), provides that: "(3) *Stock for stock on reorganization.* No gain or loss shall be recognized if stock or securities in a .corporation a party to a reorganization are, in pursuance of a plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

Whether or not they were parties, depends upon either of two subsidiary questions. The first is whether or not the acquisition by Spicer, which owned approximately two-thirds of all of the outstanding stock of Salisbury, of the remaining one-third outstanding stock constituted a merger or · consolidation within the meaning of section 112(i) (1) (A) of the Act. The second question is whether or not the acquisition by Spicer of "substantially all the properties" of Salisbury constituted a merger or consolidation within the meaning of that section.

If either of the above questions are answered in the affirmative, the order of the Board must be affirmed.

Prior to 1927, Spicer was a corporation which was engaged in the manufacture of universal joints and propellor shafts for motor vehicles in its plant at Plainfield, New Jersey. Its outstanding stock consisted of 313,750, out of an authorized 600,000 shares of no par common stock of which the taxpayer owned 118,125 shares. Of the 100,-000 shares of $100 par preferred stock authorized, none were outstanding. Salisbury was a corporation engaged in the manufacture of automobile axles at Jamestown, New York. Its outstanding stock consisted of the entire authorized 20,000 shares of no par common, and 27,500 out of an authorized 30,000 shares of $100 par preferred. Approximately two-thirds of both types of stock issued by Salisbury was owned by Spicer, and the remaining one-third was owned by the taxpayer who was president of both corporations.

---

[1] "(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

In 1927, it was determined to move both Spicer and Salisbury to Toledo, Ohio, so that they would be nearer to the automobile industry, and also to merge the operation of both corporations in one plant.

In furtherance of this plan, property was purchased in Toledo and, in the spring of 1928, construction of the plant was started. By the fall of 1928 Spicer commenced the removal of its machinery, equipment and a part of its personnel to the new plant, completing such removal in the first half of 1929. The section of the plant intended for Salisbury was begun early in 1929, and in August of that year the removal of its machinery and equipment to the new plant was begun. By fall the building was completed and by the end of the year substantially all of the machinery and equipment of Salisbury, except obsolete equipment, had been moved.

In the fall of 1928, while the above activities were taking place, the Brown-Lipe Gear Company, hereinafter called Gear Company, which manufactured gears for motor vehicles, was offered for sale for the sum of $3,900,000.

After discussion with certain bankers, a plan was evolved which called for the acquisition by Spicer of all of the outstanding stock of Salisbury and Gear Company, making them wholly owned subsidiaries of Spicer.

In effecting this purpose, the number of authorized shares of preferred stock of Spicer was increased from 100,000 to 150,000 shares, 85,000 of which were sold to the bankers for the sum of $3,846,250. With this money, Spicer purchased all of the outstanding stock of Gear Company. Spicer also issued 40,000 additional shares of no par common stock which it transferred to the taxpayer in exchange for all of his stock in Salisbury.

Since the execution of this plan, and the removal of substantially all of the assets of Salisbury to the new plant in Toledo, Salisbury has carried on no business except that of disposing of its obsolete equipment. The assets transferred to Toledo were taken over by Spicer and were carried on its books as assets belonging to it. On December 31, 1929, Salisbury notified all of its customers that it would carry on no further business and that all of its manufacturing operations would be conducted by Spicer. As Spicer owned all of the stock of Salisbury, no payment was ever made or even contemplated for the transfer of Salisbury's equipment to Spicer, though, in order to balance its books, debit and credit entries were made therein. In June, 1932, the outstanding stock of Salisbury, originally carried at over $2,000,000, was reduced to $2500. Its only remaining assets consisted of certain liberty bonds amounting to $9,176.38 which were deposited with the New York State Industrial Commissioner pending termination of its liability on account of compensation insurance, and the land and buildings located at Jamestown, New York.

The taxpayer's stock in Salisbury cost him $1,000,000. According to the determination of the commissioner, the value of the 40,000 shares of Spicer stock acquired by the taxpayer in 1929 in exchange for his Salisbury stock was $2,005,000. The taxpayer, however, did not report any income as a result of this exchange.

Section 112(i) of the Revenue Act of 1928 should be liberally construed and the definitions therein given of the terms "reorganization", "merger", "consolidation" and "party to a reorganization", are not exclusive definitions but are intended, rather, to enlarge the connotation of such terms. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428; Groman v. Commissioner, 302 U.S. 82, 86, 58 S.Ct. 108, 82 L. Ed. 63. This conclusion is strengthened by the consideration that, ordinarily, the mere acquisition by one corporation of a majority of the stock of another corporation would not fulfill the strict definition of merger or consolidation. Metropolitan Edison Co. v. Commissioner, 3 Cir., 98 F.2d 807, 809, 810. Under the somewhat broad definition given to the term "merger" in the statute, it is obvious that the acquisition by one corporation of all of the outstanding stock of another corporation was included, even if this means the acquisition of only a minority interest therein. The Board aptly expressed this conclusion as follows: "If the acquisition by one corporation of a bare majority of the stock of another constitutes a reorganization, we are of the opinion that the acquisition by one corporation of all the outstanding stock of another, thus enabling the acquiring corporation, at its pleasure, to consolidate or merge the two corporations, falls within the same category."

362

However, even if we are in error concerning the first question, it. is nevertheless clear that a merger as defined by the statute occurred between Spicer and Salisbury.

During the year 1929, besides acquiring all of the outstanding stock of Salisbury, Spicer acquired "substantially all the properties" of Salisbury and though debit and credit entries were made for bookkeeping purposes, it is obvious that no payment was ever intended to be made or was made for these "properties".

For this second, and additional reason, we are convinced that the Board reached the correct conclusion that there was a reorganization to which Spicer and Salisbury were parties and its order of redetermination is affirmed.