MICHIGAN STEEL CORPORATION OF NEW JERSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82404.   Promulgated August 30, 1938.

*Montgomery B. Angell, Esq.*, and *Weston Vernon, Jr., Esq.*, for the petitioner.

*Hartford Allen, Esq.*, for the respondent.

438

442

450

OPINION.

Turner: The petitioner contends that the transaction whereby it transferred all its assets to the Michigan Steel Corporation of Delaware, a subsidiary of the National Steel Corporation, in exchange for stock, debentures, and cash of the latter constituted a reorganization within the meaning of section 112 (i) (1) (A) of the Revenue Act of 1928 and that the gain is not recognizable under the statute. Respondent contends that the transaction was an outright sale, that the debentures of National were not securities within the meaning of the reorganization provisions of the act, and that the gain must be recognized in its entirety.

The petitioner receives support for its claim that the debentures were "securities" from *Lucien H. Tyng*, 36 B. T. A. 21, and *Karl B. Segall*, 38 B. T. A. 43, but in the view we take of the issue here presented it is not necessary to consider or rule on that question.

In support of its claim that the transaction whereby it disposed of its assets for stock and debentures of National and for cash was a statutory reorganization and that National was a "party to the reorganization", petitioner seeks to distinguish this case from *Groman* v. *Commissioner*, 302 U. S. 82; *Helvering* v. *Bashford*, 302 U. S. 454, and *A. W. Mellon*, 36 B. T. A. 977. As to the *Groman* case petitioner states on brief that "Glidden received nothing from Indiana stockholders and transferred nothing to them", whereas in the instant case National "constructively" received the petitioner's assets and issued and delivered its own stock, debentures and cash directly to petitioner. With respect to whether National received anything from

the petitioner in the present case, and whether Glidden received anything from the Indiana stockholders in the *Groman* case, the facts are indistinguishable. National and Glidden were the contracting parties in each case and directed that the assets acquired be transferred to their wholly owned subsidiaries, Michigan of Delaware and Ohio, respectively. In *Helvering* v. *Bashford, supra*, the taxpayer tried to distinguish the *Groman* case by pointing out that Atlas, the parent corporation, "was a party to all the exchanges", but the Supreme Court said:

Any direct ownership by Atlas of Peerless, Black Diamond, and Union was transitory and without real substance; it was part of a plan which contemplated the immediate transfer of the stock or the assets or both of the three reorganized companies to the new Atlas subsidiary. Hence, under the rule stated, the above distinctions are not of legal significance. The difference in the degree of stock control by the parent company of its subsidiary and the difference in the method or means by which that control was secured was not material. The participation of Atlas in the reorganization of its competitors into a new company which became a subsidiary did not make Atlas "a party to the reorganization." The continuity of interest required by the rule is lacking. [Italics ours.]

The alleged distinction between the *Groman* case and the present case, to the effect that Glidden transferred nothing to the Indiana stockholders, whereas National transferred its own stock, debentures, and cash directly to petitioner, is of no significance inasmuch as the Supreme Court on December 6, 1937, deleted from the *Groman* opinion the sentence "Glidden transferred nothing to them [Indiana stockholders]", and at the same time denied a motion for a rehearing. (302 U. S. 654.) We think that fact shows that the Supreme Court was wholly disinterested in the question of whether the securities were transferred directly from the contracting parent corporation or indirectly through a wholly owned subsidiary. This point was also presented to the Court in the *Bashford* case and was disposed of as already shown.

We are unable to satisfactorily distinguish the present case from the *Groman* and *Bashford* cases and we think those cases hold that a parent corporation may not be regarded as a "party to a reorganization", where as part of the plan it was contemplated that the purchased assets would be and in fact were transferred to a subsidiary. That was the situation in the present case. It was never contemplated that National would hold and operate the properties purchased from the petitioner. We therefore hold that the transaction comes within the general rule of section 112 (a) of the Revenue Act of 1928 and the entire amount of petitioner's gain is recognized. *A. W. Mellon, supra,* and *Gilbert B. Hedden,* 37 B. T. A. 1082.

Petitioner contends that if the transaction in question is held to be a sale, it was a closed transaction in 1930 and the gain, if any, accrued

and was taxable in that year. The respondent contends that the transaction was not consummated until January 19, 1931, at which time the petitioner's directors and trustees in dissolution approved the contract of sale previously entered into.

As to the effective date of the contract between petitioner and National, the parties agreed specifically as follows:

Fifth. It is understood and agreed that Michigan Steel Corporation shall not be obligated to consummate the sale herein agreed to until the Secretary of State of New Jersey has issued his certificate of its dissolution pursuant to the consent and authority of its stockholders, and said Michigan Steel Corporation agrees to promptly submit this contract to its stockholders for their approval and to take proper action looking to its dissolution.

The meaning of the language quoted is in our opinion too obvious to require extended discussion. The parties, in so many words, agreed that the petitioner should "not be obligated to consummate the sale" until the happening of a certain event, namely, the delivery of the certificate of dissolution, and the facts show that that event occurred in January 1931. The respondent is accordingly sustained on this issue.

*Decision will be entered under Rule 50.*