SAMUEL A. NEIDICH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77905.   Promulgated November 18, 1938.

*Ruby R. Vale, Esq.,* and *John A. Conlin, C. P. A.,* for the petitioner.

*W. Frank Gibbs, Esq., J. E. Marshall, Esq.,* and *George F. James, Esq.,* for the respondent.

# 1182

OPINION.

DISNEY: The petitioner contends that he received the Underwood stock in a nontaxable reorganization, to which Underwood was a party. He argues that the provisions of the agreement of January 3, 1929, among Underwood, the New Jersey corporation, and himself are consistent with the verbal agreement had with Wagoner in December 1928; that, interpreting the written agreement in the light of the previous undertaking, there were only two corporate parties to the plan, namely, Underwood and the New Jersey corporation. The effect of petitioner's argument is to ask us to ignore the part the Delaware corporation played in the transaction, and consider the plan as one in which there was nothing more than a transfer of assets of the New Jersey corporation directly to Underwood for stock of Underwood. The contention of the respondent is that the intention of the parties is evidenced by the terms of the January 3, 1929, agreement and that the transaction as finally agreed upon and carried out did not make Underwood a party to a reorganization.

It was stipulated that at the December 26, 1928, meeting, Wagoner and petitioner entered into a verbal agreement for the acquisition by Underwood of "the business and assets of the New Jersey corporation" in exchange for 21,005 shares of common stock of Underwood, subject, however, to the understanding that the "verbal agreement would be made the subject of a written contract." Wagoner, testifying from notes made by him at the time the verbal understanding was reached, testified that the agreement was for Underwood to acquire the business of the New Jersey corporation by an exchange of Underwood stock for assets or stock of the New Jersey corporation, as payment might be recommended by counsel for Underwood. Upon being consulted a few days later by Wagoner, counsel for Underwood suggested that the transaction take the form set out in the agreement executed as of January 3, 1929, and the proposal was accepted by Wagoner and petitioner, as representatives of their respective corporations. While the finance committee of Underwood

was aware of the negotiations being carried on with the petitioner, Wagoner's actions were at all times subject to the approval of the board of directors of Underwood.

The method originally agreed upon by the individuals for acquiring control of the business of the New Jersey corporation was abandoned in favor of one calling for the transfer of the property of the New Jersey corporation directly to a new corporation, to be organized and wholly owned by Underwood, in exchange for Underwood common stock, delivered directly by Underwood to the New Jersey corporation. The new plan was made the subject of a written contract, as contemplated by the agreement previously entered into between the individuals, and thereafter, pursuant to authority granted by the boards of directors of the corporations concerned, an agreement embodying the terms of the final understanding was duly executed. This agreement was the only one authorized by Underwood and the New Jersey corporation and to it we must look for the intention of the parties concerned. "The plan of reorganization was the contract made and performed." *Watts* v. *Commissioner*, 75 Fed. (2d) 981; affd., 296 U. S. 387.

The written agreement is inconsistent with the oral understanding. The original understanding did not provide for ownership of assets of the New Jersey corporation by a new corporation, whereas the only plan to which the corporations concerned ever became a party provided in unambiguous terms for the transfer of the assets directly to a new corporation for stock of Underwood. The point in *Helvering* v. *Tex-Penn Oil Co.*, 300 U. S. 481, cited by the petitioner, was whether it was proper to look through the form of certain documents to determine the actual fact respecting the payment of certain consideration. The fact here is that Underwood and the New Jersey corporation, by the only binding contract ever entered into between them on the subject, agreed to the transfer of the assets of the latter to a new corporation for stock of the former.

The conduct of the New Jersey corporation and Underwood was in accordance with the terms of the January 3, 1929, agreement. Upon the organization of the Delaware corporation by Underwood, the New Jersey corporation transferred its assets to the Delaware corporation, for which Underwood received from the Delaware corporation $300 cash, which had been acquired from Underwood or its representatives for stock, and 4,190 shares of Delaware corporation stock. The Delaware corporation also assumed certain liabilities of the New Jersey corporation. As consideration for the transfer by the New Jersey corporation to the Delaware corporation, Underwood, in accordance with the January 3, 1929, contract, delivered to the New Jersey corporation, 21,005 shares of its common stock,

which stock was subsequently distributed to petitioner and in part by him to other stockholders of the New Jersey corporation. Upon the completion of the transaction, petitioner held stock of Underwood, Underwood held all of the stock of the Delaware corporation, and the Delaware corporation owned all of the assets of the New Jersey corporation.

Petitioner seeks to distinguish the case from *Groman* v. *Commissioner*, 302 U. S. 82; *Helvering* v. *Bashford*, 302 U. S. 454; *A. W. Mellon*, 36 B. T. A. 977; and *Gilbert D. Hedden*, 37 B. T. A. 1082. We fail to observe any material distinguishing features. In the *Groman* case, the Glidden Co. contracted with stockholders of an Indiana corporation for the organization of an Ohio corporation to be owned by the Glidden Co., and for the acquisition by the Ohio Corporation of all of the stock of the Indiana corporation in exchange for cash and preferred stock of the Ohio and Glidden companies. In the *Bashford* case the stock and assets of three corporations were transferred to a new corporation, in exchange for which the stockholders of the three corporations received cash, common stock of the new corporation, and common and preferred stock of Atlas. In the *Mellon* case, part of the assets of a corporation was, in pursuance of a contract with the Bethlehem Steel Corporation, transferred directly to subsidiaries of Bethlehem, in exchange for common stock and bonds of Bethlehem. It was held that the Glidden and Atlas companies and the Bethlehem Steel Corporation were not parties to reorganizations and that the securities the respective petitioners received in those corporations were subject to tax. In the *Hedden* case, in accordance with a contract with the Bethlehem Steel Corporation, substantially all of the assets of the Hedden Iron Construction Co. were transferred to two subsidiaries of Bethlehem in exchange for cash and bonds of Bethlehem, delivered directly by Bethlehem to the Hedden Co. Following the *Groman*, *Bashford*, and *Mellon* cases, and refusing to follow *Schuh Trading Co.* v. *Commissioner*, 95 Fed. (2d) 404, upon the ground that it could not be distinguished from the *Groman* and *Bashford* cases, we held that Hedden's gain should be recognized.

The petitioner emphasizes the fact that the Delaware corporation was a wholly owned subsidiary of Underwood and that, as a nominee or transferee of Underwood to receive the assets of the New Jersey corporation, the Delaware corporation should be disregarded in the transaction. He claims that under the circumstances Underwood was the purchaser. Like facts were present in the *Mellon* and *Hedden* cases, and *Michigan Steel Corporation of New Jersey*, 38 B. T. A. 435, and in the *Bashford* case the Court concluded that such circumstances were not enough to take the case out of the rule. The Court said:

Any direct ownership by Atlas of Peerless, Black Diamond, and Union was transitory and without real substance; it was part of a plan which contemplated the immediate transfer of the stock or the assets or both of the three reorganized companies to the new Atlas subsidiary. Hence under the rule stated, the above distinctions are not of legal significance. The difference in the degree of stock control by the parent company of its subsidiary and the difference in the method or means by which that control was secured are not material. The participation of Atlas in the reorganization of its competitors into a new company which became a subsidiary did not make Atlas "a party to the reorganization." The continuity of interest required by the rule is lacking.

The respondent's action in taxing petitioner on the gain derived from the receipt of 18,177 shares of common stock of Underwood is sustained. Having so concluded, we find, in accordance with a stipulation of the parties, that petitioner in 1929 realized a taxable capital gain of $1,224,704.66 from the receipt of the Underwood stock and an ordinary gain of $142,555 upon the subsequent sale in 1929 of 3,000 shares of the stock.

*Decision will be entered under Rule 50.*