*143 OPINION.
ARNOLD:
In these proceedings R. W. Briggs & Co. exchanged certain depreciable assets for all the capital stock of each of the petitioners, pursuant to certain contracts with four of its superintendents. The depreciable assets had been valued by the contracting parties prior to their exchange for capital stock as having a value in excess of their depreciated value upon the books of R. W. Briggs & Co. The petitioners deducted depreciation based upon this increased valuation. This deduction respondent denied, but permitted a deduction for depreciation upon the same basis as such assets had in the hands of the transferor. The respondent in his deficiency notices justifies his action under section. 113 (a) (7) of the Revenue Acts of 1932 and 1934. In his brief he asserts that his action is supported in any event by sections 113 (a) (8) and 112 (b) (5) of said acts.
Section 113 (a) (7) provides the basis for determining gain or loss, or depreciation, where property is acquired by a corporation “in connection with a reorganization.” Section 113 (a) (8) provides the basis where stock is issued “in connection with a transaction described in section 112 (b) (5).” The latter section prohibits the recognition of gain or “if property is transferred to a corporation by one or more *144 persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation.” This prohibition likewise applies to the recognition of a new depreciable basis. Sec. 114 (a), Eevenue Acts of 1932 and 1934.
Section 113 (a) (7) applies to acquisitions of property in connection with a reorganization. Its application here depends upon whether a reorganization occurred, since in any event “an interest or control in such property of 50 per centum, or more remained” in R. W. Briggs & Co. A reorganization means, inter alia, “a transfer by a corporation of all or part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred.” Sec. 112 (g) (1) (C), Revenue Act of 1934; sec. 112 (i) (1) (B), Revenue Act of 1932. “Control,” as used in section 112 of each act, “means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.”
The bases for depreciation, therefore, depend upon whether immediately after the transfers R. W. Briggs & Co. had the “ownership of at least 80 per centum” of the stock of each petitioner. Under the stipulated facts R. W. Briggs & Co. owned 55 percent of the stock in any event, and it owned 100 percent of the stock unless the contracts transferred 45 percent thereof to the superintendents. It is stipulated that all the stock of each petitioner was issued to R. W. Briggs & Co. and that it was the owner of record on the books of petitioners. To establish new bases for their depreciable assets these petitioners must show that, despite the record ownership of R. W. Briggs & Co., 45 percent of the stock was owned by the superintendents immediately after the transfer of the assets for stock. This, the petitioners have failed to do.
In their broader aspects the Darby, Killian, Spence, and Thornton contracts were employment contracts, coupled with the right to purchase. They provide for small salaries and 45 percent of the operating profits in consideration for services as superintendents of construction. R. W. Briggs & Co., however, required the superintendents to use their portion of the profits in the acquisition of a 45 percent interest in the several corporations. The Killian, Spence, and Thornton contracts contain specific language relating to the purchase of stock by these superintendents from R. W. Briggs & Co. More particularly, their contracts were contracts to purchase, and their ability to purchase was insured by the right to receive 45 percent of the profits from the construction jobs as compensation for their services. We find no provisions in the contracts showing an intention, nor do we *145 find any acts by the parties manifesting an intention, that Killian, Spence, and Thornton -were to become owners of 45 percent of the stock of the respective petitioners, either upon the execution of the contracts, the organization of the petitioners, or the exchange of the assets for the stock. Our analysis of the contracts convinces ns that the parties intended that ownership of the stock should remain in R. W. Briggs & Co. until the stock was paid for and transferred.
The Darby contract differs from the other contracts in that Darby was to and did execute notes for “his pro rata share” of the capital stock of Briggs-Darby Construction Co. If it can be said that such notes were received in 'payment of his stock, he would be the equitable owner thereof even though the stock stood in the name of R. W. Briggs & Co. on the petitioner’s books. Paragraph 3 of the Darby contract provides that Darby’s notes should be “secured by the transfer and deposit of * * * the capital stock in the company owned by” Darby, “the same to be held as collateral.” This language indicates that the stock would be issued to Darby and he would transfer it to and deposit it with R. W. Briggs & Co. as collateral security for his notes.
If the parties intended that Darby should become the owner of the stock at the time the contract was executed, they failed to carry out their intention, because the stipulated facts show that all the stock of Briggs-Darby Construction Co. was issued to R. W. Briggs & Co. The stock certificate record shows that capital stock was first issued to the incorporators on March 24, 1931, and that thereafter, and on the same date, certificate No. 5 was issued to R. W. Briggs & Co. for the full 3,300 shares. This certificate was surrendered by R. W. Briggs & Co. on February 17,1932, at which time the certificate was canceled and shares were issued to Darby for the first time. Had the notes executed by Darby been intended as payment for his stock, the 1,485 shares would have been issued to him then and transferred by him to R. W. Briggs & Co. to hold as collateral as the contract provided. This was not done, however, and the failure to follow the contract procedure convinces us that the notes were not given, or intended to be given, or received, as payment, but as evidence only of the amount of profits to be applied in the purchase of the stock.
The things done under the Darby contract are a strong indication of what the parties intended and further strengthen our opinion that the notes were neither given nor received in payment for the stock. If we are to consider the notes as the equivalent of cash, there should have been some evidence adduced that the notes were so accepted. In the absence of evidence of such understanding or intention, the notes can not be so considered. Stiver v. Commissioner, 90 Fed. (2d) 505, 508, and cases there cited. See also Williston on Contracts, vol. 3, sec. *146 1922, p. 3265; Guilford v. Mulkin, 85 Hun, 489; 33 N. Y. S. 134; Schlemmer v. United States, 94 Fed. (2d) 77; Dudley T. Humphrey, 32 B. T. A. 280.
Since our analysis of the contracts indicates that R. W. Briggs & Co. had the ownership of 100 percent of the voting stock of each petitioner immediately after the exchanges, the transactions could come within either section 113 (a) (7) or section 113 (a) (8). That is, the transfers as to these petitioners could have been in connection with a reorganization under section 113 (a) (7), or in connection with a transaction described under 112 (b) (5) as provided in section 113 (a) (8). We have considered the issue under section 113 (a) (8), but the application of either section would fix the basis for depreciation as the same as the assets had in the hands of the transferor, American Compress & Warehouse Co. v. Bender, 70 Fed. (2d) 655: certiorari denied, 293 U. S. 607.
We have considered the authorities cited by petitioners, including Groman v. Commissioner, 302 U. S. 82; Helvering v. Bashford, 302 U. S. 454; Bassick v. Commissioner, 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592; Hazeltine Corporation v. Commissioner, 89 Fed. (2d) 513, and others, b'ut find them to be distinguishable upon their facts. For the reasons hereinabove set forth we hold that petitioners are not entitled to a “stepped up basis” for depreciation.
Petitioners’ alternative contention that the excess profit tax is invalid has been decided adversely to them in A. J. Crowhurst & Sons, Inc., 38 B. T. A. 1072; W. & K. Holding Corporation, 38 B. T. A. 830; Allied Agents, Inc. v. United States, 26 Fed. Supp. 98; and Del Mar Addition, 40 B. T. A. 833.

Decision will be entered under Rule 50.