RICHARD K. MELLON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SARAH MELLON SCAIFE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15101, 15102. Promulgated January 31, 1949.

*William M. Robinson, Esq., Joseph D. Hughes, Esq., D. A. Banks, Esq.,* and *William Wallace Booth, Esq.,* for the petitioners.
*Stanley L. Drexler, Esq.,* for the respondent.

## OPINION.

Van Fossan, *Judge*: The question to be determined is the proper basis to be used in determining gain or loss on the sale of certain Pullman stock by petitioners in the taxable years. The decision of this question depends upon whether the Pullman stock was received in 1930 by petitioners in a taxable or nontaxable transaction.

It is contended by petitioners that the transaction did not constitute a reorganization within the meaning of section 112 (i) (1) (A) of the Revenue Act of 1928 [1] for the reasons, (1) that the "plan of reorgani-

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the

zation and consolidation" under the agreement between Standard and Pullman of February 18, 1930, as supplemented by the agreement of March 1, 1930, was not intended to, nor did it, comply with any requirements for consummating a merger or consolidation as provided by the statutes of the states of their creation; (2) that Pullman did not acquire "substantially all of the properties" of Standard; and (3) that Pullman was not a "party to the reorganization" within the meaning of section 112 of the Revenue Act of 1928, and that therefore the 1930 transaction was taxable and the basis to be used in determining gain or loss on the sale of the Pullman stock in the taxable years is the fair market value thereof at the time of distribution, viz., $82.0625 per share, as stipulated.

It is contended by respondent that the transaction as carried out as of March 1, 1930, between Standard, Pullman, and New Standard except to the extent of the cash received, constituted a nontaxable reorganization under section 112 (i) (1) (A) ; that accordingly the basis of the Pullman stock in the hands of petitioners must be determined by reference to the basis of the stock of Standard.

The respondent argues that the transaction by which Standard divested itself of 34.15429 per cent in value of its assets by transfer thereof to Securities Co. should be regarded as a separate transaction for the purpose of determining whether the remaining assets subsequently transferred by Standard constituted all or substantially all of the assets of Standard; that Pullman was a party to the contract of February 18, 1930 ; that New Standard, its subsidiary, was not a party to such contract and was not in existence at that time; that Pullman, whose stock, plus cash, formed the entire consideration paid to Standard for its remaining assets, "was entitled to receive all of the assets of Standard and did receive such assets," and should be held to be a party to the reorganization on the authority of *Schuh Trading Co.* v. *Commissioner* (CCA-7), 95 Fed. (2d) 404; and that the facts herein are distinguishable from the facts before the Supreme Court in *Groman* v. *Commissioner*, 302 U. S. 82, and *Helvering* v. *Bashford*, 302 U. S. 454, relied upon by petitioners and hence such cases are not controlling.

In *Gilbert D. Hedden*, 37 B. T. A. 1082; affd. (CCA-3), 105 Fed. (2d) 311; certiorari denied, 308 U. S. 575; rehearing denied, 308 U. S.

---

gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

\* \* \* \* \* \* \*

(1) DEFINITION OF REORGANIZATION.—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of \* \* \* substantially all the properties of another corporation) \* \* \*.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

636, corporation H gave corporation B an option to acquire substantially all of its assets for bonds of B and a small amount of cash. B accepted, but named two subsidiaries U and M to receive the H assets. It was held that the entire gain to H was recognizable. The Board of Tax Appeals in its opinion, in reference to the *Schuh Trading Co.* case, stated, in part, as follows:

* * * We respectfully decline to follow the opinion of the Circuit Court in the *Schuh* case because we can not distinguish it from the *Groman* and *Bashford* cases.

See also *Davis* v. *United States*, 26 Fed. Supp. 1007; *Whitney Corporation* v. *Commissioner*, 105 Fed. (2d) 438; and *Lawrence* v. *Commissioner* (CCA–7), 123 Fed. (2d) 555, in which the Circuit Court of Appeals, Seventh Circuit, stated that the cases, including the *Schuh Trading Co.* case cited by petitioner to sustain his position that Socony-Vacuum was a party to the reorganization "cannot, in the light of the *Groman* case, be regarded as authorities."

The fact that Pullman was a party to the agreement of February 18, 1930, and the supplemental agreement thereof of March 1, 1930, is not determinative of the question whether it was a party to the reorganization. In *Groman* v. *Commissioner, supra,* Glidden also was a party to an agreement with the shareholders of Indiana, pursuant to which Indiana transferred its assets and Indiana's shareholders their stock in Indiana to Ohio, a corporation organized by Glidden, which became the owner of all of Ohio's common stock, but none of its preferred stock. The shareholders of Indiana received 5,276 shares of the prior preference stock of Glidden, valued at $553,980; 5,000 shares of the preferred stock of Ohio, valued at $500,000; and cash of $153,036.66. Indiana dissolved. The Supreme Court in that case stated, in part, as follows:

* * * Do the facts that Glidden contracted for the exchange and made it possible by subscribing and paying for Ohio's common stock in cash, so that Ohio could consummate the exchange, render Glidden a party to the reorganization? No more so than if a banking corporation had made the agreement with Indiana's shareholders and had organized the new corporation, and, by subscription to its stock and payment therefor in money and the banking company's stock put the new company in position to complete the exchange. Not every corporate broker, promoter, or agent which enters into a written agreement effectuating a reorganization, as defined in the Revenue Act, thereby becomes a party to the reorganization. And, if it is not a party, its stock received in exchange, pursuant to the plan, is "other property" mentioned in section 112 (c) (1) and must be reckoned in computing gain or loss to the recipient. Glidden was, in the transaction in question, no more than the efficient agent in bringing about a reorganization. It was not, in the natural meaning of the term, a party to the reorganization.

Herein the exchange was between Standard and New Standard, the subsidiary organized by Pullman. The fact that Pullman entered

the transaction on its books did not make it the owner of such assets. Pullman was merely the "efficient agent" making it possible for New Standard to acquire the assets of Standard by furnishing the cash and 560,000 shares of its own stock.

The respondent also argues that New Standard was simply a creature of Pullman's convenience in whose name Pullman chose to place the assets, and that through ownership of all of the stock of such subsidiary Pullman controlled the assets acquired from Standard as effectively as if the assets had been transferred to it, and that as shareholders of Pullman the relationship of the former Standard shareholders to the assets transferred continued to be the same. Again we quote from the *Groman* case, wherein a similar argument was made, as to which the Court stated:

It is argued, however, that Ohio was the alter ego of Glidden; that in truth Glidden was the principal and Ohio its agent; that we should look at the realities of the situation, disregard the corporate entity of Ohio, and treat it as Glidden. But to do so would be to ignore the purpose of the reorganization sections of the statute, which, as we have said, is that where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or different one, then to the extent, but only to the extent, of that continuity of interest, the exchange is to be treated as one not giving rise to present gain or loss. * * *

The Court held that the former shareholders of Indiana, as shareholders of Glidden, had no continued substantial interest in the assets of Indiana transferred to Ohio, "but an interest in the assets of Glidden a part of which was the common stock of Ohio." There is even less continuity of interest in the instant case. The shareholders of Standard received no stock whatever of New Standard, to which the assets involved were transferred by Standard. They lost all their interest as corporate shareholders in the assets transferred and acquired an interest in other assets, i. e., the assets of Pullman, a part of which was the common stock of New Standard. The 560,000 shares of Pullman distributed by Standard to its shareholders in redemption of their Standard shares represented only 14.4516 per cent of the total outstanding common stock of Pullman. This represents a very substantial change in their interest in the assets of Standard.

Upon authority of the *Groman* and *Bashford* cases we hold that Pullman was not a "party to the reorganization." See also *A. W. Mellon*, 36 B. T. A. 977; *Samuel A. Neidich*, 38 B. T. A. 1178; affd., 105 Fed. (2d) 1019; certiorari denied, 308 U. S. 599; *Anheuser-Busch, Inc.*, 40 B. T. A. 1100; affd., 115 Fed. (2d) 662; certiorari denied, 312 U. S. 699.

Nor do we agree with the respondent that Standard transferred substantially all of its assets to New Standard within the meaning of section 112 (i) (1) (A). In *Koppers Coal Co.*, 6 T. C. 1209, 1218, it is stated that if:

* * * several transactions were in fact merely steps in carrying out one definite preconceived purpose, the object sought and obtained must govern and the integrated steps used in effecting the desired result may not be treated separately for tax purposes either at the instance of the taxpayer or the taxing authority, or by agreement between both. * * *

At the very outset and throughout the conferences between the representatives of Standard and Pullman it was understood that Pullman was interested only in a portion of the assets of Standard and certain of its subsidiaries, which constituted approximately 66 per cent in value of all the assets of Standard. The creation of Securities Co. and the transfer to it of the unwanted assets was but a step to effectuate the transfer of the wanted assets. The transfer of the unwanted assets by Standard served no purposes except to strip that corporation of the unwanted assets in anticipation of the transfer of the wanted assets to a new corporation, New Standard, and Standard's dissolution, which was the object sought to be obtained. *Elkhorn Coal Co.* v. *Helvering* (CCA-4), 95 Fed. (2d) 732; certiorari denied, 305 U. S. 605; rehearing denied, 305 U. S. 670, and *A. W. Mellon, supra.*

It is conceded by respondent that the facts in *Elkhorn Coal Co., supra,* and in *A. W. Mellon, supra,* relied upon by petitioners, are closely analogous to the facts in this proceeding. He argues, however, that such cases are not controlling because of one important difference, i. e., in both cases the taxpayer was asserting the nontaxability of the reorganization in order to escape taxation upon the gain realized, whereas the petitioners herein "have successfully avoided taxes on the stock which they received in 1930 based upon the contention, fortified by a Bureau ruling to that effect, that the reorganization was nontaxable and in the instant proceedings they are contending and asking the Court to find that the reorganization was taxable for the purpose of avoiding further taxes by obtaining an increased basis for the stock which they received in 1930."

The respondent concedes that the evidence shows no concealment or misrepresentation and accordingly he has not pleaded and does not assert a technical estoppel. He argues, however, that even though the elements of a technical estoppel are absent, there is a duty of consistency which prevents petitioners from maintaining in these proceedings that less than all of the assets of Standard were conveyed to Pullman or that Pullman was not a party to the reorganization, particularly since assessment and collection of 1930 taxes are barred by the statute of limitations and adjustment thereof can not be made under section 3801, Internal Revenue Code. Similar concessions and arguments were made by respondent in *American Light & Traction Co.*, 42 B. T. A. 1121; aff'd. (CCA-7), 125 Fed. (2d) 365. The Board in its opinion stated in part:

* * * Since both parties have full opportunity to have the tax liability determined in accordance with the statutes, the statutory test should not be aban-

doned for a test based upon the ethics or morals of the conduct of one of the parties except under exceptional circumstances. *Tide Water Oil Co.*, 29 B. T. A. 1208. The Board said in *James Couzens*, 11 B. T. A. 1040, that "such an argument must be treated with the utmost caution, since its sanction in any case would result in having an individual tax liability depend, not upon the factors and measures prescribed by Congress as applicable to all, but upon the statements and conduct of a particular" person.

In that case it was held that the taxpayer was not estopped to have its taxes for 1930 and 1931 determined in accordance with the statute where the Commissioner, with full knowledge of the facts, failed to collect taxes due for 1928 because he thought an exchange in that year was a reorganization and the gain not recognizable. To similar effect are: *Ross* v. *Commissioner* (CCA–3), 169 Fed. (2d) 483; *Pancoast Hotel Co.*, 2 T. C. 362, 369; *Mahlon D. Thatcher*, 46 B. T. A. 869, 881 (reversed on another issue, 137 Fed. (2d) 128) ; *Helvering* v. *Williams* (CCA–8), 97 Fed. (2d) 810; *United States* v. *Dickinson* (CCA–2), 95 Fed. (2d) 65; *Florida Machine & Foundry Co.* v. *Fahs*, 73 Fed. Supp. 379; affd. (CCA–5), 168 Fed. (2d) 957.

It is our conclusion that Standard did not transfer "substantially all" of its assets to New Standard and that therefore the transactions in 1930 between Standard, Pullman, and New Standard did not constitute a reorganization within the meaning of section 112 (i) (1) (A) of the Revenue Act of 1928. *Elkhorn Coal Co.* v. *Helvering, supra; A. W. Mellon, supra; Pillar Rock Packing Co.* v. *Commissioner* (CCA–9), 90 Fed. (2d) 949; affirming 34 B. T. A. 571; *Arctic Ice Machine Co.*, 23 B. T. A. 1223. It follows that the basis to be used in computing the gain realized by petitioners on the sale of the Pullman stock in the taxable years is its fair market value at the time of its distribution, or $82.0625 per share.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*