**Hartwell F. CALCOTE and Marianna R. Calcote, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 981–67.

United States District Court, D. New Jersey.

March 8, 1971.

Samuel W. Lambert, Smith & Lambert, Princeton, N. J., for plaintiffs.

Herbert J. Stern, U. S. Atty., Newark, N. J., David A. Wilson, Jr., Stephen J.

Csontos, Department of Justice, Washington, D. C., for defendant.

## OPINION

BARLOW, District Judge.

. This is a suit for refund of income taxes, pursuant to 28 U.S.C. § 1346(a) (1).

On August 28th, 1968, the parties submitted this action to the court for determination upon a stipulation of facts which included the following in relevant part:

Chem-Atom Associates, of Princeton, New Jersey, Inc. (hereinafter Chem-Atom) was a holding company which owned, among other stock, eighty per cent (80%) of the stock of Aero Chem Research Laboratories, Inc. (hereinafter Aero Chem). Prior to September, 1960, the issued common stock of Chem-Atom was owned as follows:

| Names | Number of Shares |
|---|---|
| JOHN B. FENN | 6,459 |
| SEYMOUR M. BOGDONOFF | 4,841 |
| HARTWELL F. CALCOTE | 1,412 |
| Total | 12,712 |

Prior to August, 1960, the issued and outstanding common stock of Aero Chem was owned as follows:

| Names | Number of Shares |
|---|---|
| CHEM-ATOM | 480 |
| HARTWELL F. CALCOTE | 60 |
| G. R. BENT, II | 30 |
| JOHN B. FENN | 15 |
| SEYMOUR M. BOGDONOFF | 15 |
| Total | 600 |

In an effort to acquire additional capital, as well as access to the knowledge and personnel which a large firm could provide, Chem-Atom and Aero Chem, in 1960, entered into negotiations with Pfaudler Permutit, Inc. (hereinafter Pfaudler), a corporation which manufactured glass-lined equipment of various types. Pfaudler was interested in acquiring the Chem-Atom stock, and also quiring the Chem-Atom stock, and also

desired to make Aero Chem a wholly-owned subsidiary of Chem-Atom. In furtherance of these goals, an agreement dated July 21st, 1960, was executed which provided that Chem-Atom would acquire the remaining twenty per cent (20%) interest in Aero Chem which belonged to Messrs. Calcote, Bent, Fenn and Bogdonoff, in exchange for 26.48 shares of Chem-Atom stock for each share of Aero Chem. (See Stipulation, Exhibit A.) After this exchange was consummated, all of the stock of Aero Chem was owned by Chem-Atom, with the stock of the latter held as follows:

| Names | Number of Shares |
|---|---|
| JOHN B. FENN | 6,856 |
| SEYMOUR M. BOGDONOFF | 5,238 |
| HARTWELL F. CALCOTE | 3,001 |
| G. R. BENT | 795 |
| Total | 15,890 |

Thereafter, by agreement dated September 23rd, 1960 (Stipulation, Exhibit B) Pfaudler acquired all of the stock of Chem-Atom in exchange for its own common stock. Pursuant to said agreement, plaintiff gave up his 3,001 shares of Chem-Atom and received 2,311 shares of Pfaudler in 1960, and 2,802 shares of the stock of Pfaudler's successor corporation (Ritter Permutit Corp.) in 1965.

On August 16th, 1960, a ruling was requested by Chem-Atom and its stockholders as to the federal income tax consequences of the aforementioned transactions. In his ruling dated November 29th, 1960 (Stipulation, Exhibit C), the Commissioner of Internal Revenue determined that the Chem-Atom—Aero Chem exchange did not qualify as a reorganization under § 368(a) (1) (B) (also referred to herein as a "Type B reorganization") of the Internal Revenue Code of 1954. In reaching this conclusion, the Commissioner noted (at p. 4):

"* * * Thus a distinct corporate entity (Pfaudler) will be interposed between the transferors, who will be-

come Pfaudler shareholders, and their interest in the Aero Chem stock which will be owned by Chem-Atom, as a subsidiary of Pfaudler. Stockholders who are indirectly interested in transferred assets through ownership of stock of a corporation (Pfaudler) among whose assets is stock of a corporation (Chem-Atom) which owns the transferred assets, do not have a continued substantial interest in the transferee."

At the same time, it was the Commissioner's conclusion that the acquisition by Pfaudler of the Chem-Atom stock *did* constitute a reorganization within § 368 (a) (1) (B), and thus no gain or loss would be recognized.

On their income tax return for the year 1960, plaintiffs reported a capital gain from the exchange of the Aero-Chem—Chem-Atom stock and paid a tax of $12,133.16. Thereafter, on their 1965 return, plaintiffs reported a gain from the additional distribution of Pfaudler stock and paid a tax of $11,244.67. After claims for refunds were denied by the Commissioner of the Internal Revenue Service, plaintiffs brought this action for refund.

The sole question before the court is whether the transfer of the Aero Chem stock by plaintiffs was a nontaxable reorganization pursuant to § 368(a) (1) (B).

Plaintiffs advance several arguments in support of their position that this transaction qualified as a tax-free reorganization. The government, in turn, counters with a detailed analysis of the various prerequisites of such a Type B reorganization, concluding that the transaction in question failed in several respects to meet these conditions.

 A "reorganization" carries with it a technical meaning for federal income tax purposes.[1] Hence, the statutory language must be carefully examined in the light of judicial interpretation in order to determine its precise meaning.

§ 354(a) (1) of the Internal Revenue Code of 1954 provides as follows:

"In general.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

There are several types of reorganizations described in § 368(a) (1). The transaction here involves a stock-for-stock exchange, and thus purports to be a "Type B" reorganization. The pertinent provisions of the Code for the year 1960 which are applicable thereto read as follows:

"SEC. 368. Definitions Relating to Corporate Reorganizations.

(a) *Reorganization.*—

(1) *In general.*—For purposes of parts I and II and this part, the term 'reorganization' means—

\* \* \* \* \* \*

(B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition),

\* \* \* \* \* \*

(b) *Party to a reorganization.*—For purposes of this part, the term 'a party to a reorganization' includes—

(1) a corporation resulting from a reorganization, and

(2) both corporations, in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another."

The leading case involving a Type B triangular reorganization is Groman v. Commissioner of Internal Revenue, 302

---

1. See Federal Tax Regulations for 1960, § 1.368–2 (a),

U.S. 82, 58 S.Ct. 108, 82 L.Ed. 63 (1937). Although that decision was based upon the Revenue Act of 1928, that statute was the precursor of the statutory provisions operative herein.

*Groman* involved an agreement between the Glidden Corporation and the shareholders of another corporation, Indiana, wherein Glidden would form a new corporation, Ohio, and would transfer both Glidden and Ohio stock to the Indiana shareholders, while the latter would transfer all of their stock to Ohio. In addition, Indiana would transfer its assets to Ohio and would be dissolved. The net effect of these transactions was to cause a subsidiary (Ohio) to transfer the stock of its parent (Glidden) in exchange for all of the stock and assets of a third corporation (Indiana).

The Supreme Court, in holding that the receipt of the Glidden shares by the Indiana shareholders should be recognized as a taxable event, decided that: 1) Glidden was not a "party to the reorganization" within the meaning of the Revenue Act of 1928, and 2) the Indiana shareholders did not maintain a "continuity of interest" in the corporation after the exchange took place. The companion case of Helvering v. Bashford, 302 U.S. 454, 58 S.Ct. 307, 82 L.Ed. 367 (1938), reached a similar result on parallel facts.

Effective January 1st, 1964, Congress amended § 368(a) (1) (B) of the Code in an effort to change the state of the law as enunciated in *Groman* and *Bashford*. In so doing, the Senate Finance Committee reported, in part:

" * * *

(b) General reasons for provisions.—The Supreme Court in Groman v. Helvering (302 U.S. 82 [58 S.Ct. 108, 82 L.Ed. 63]) and Helvering v. Bashford (302 U.S. 454 [58 S.Ct. 307, 82 L.Ed. 367]), found that exchanges in which the parent corporation transferred stock while its subsidiary corporation received stock or the assets of another corporation did not qualify as tax-free

reorganizations because the required 'continuity of interest' was lacking.

"In the 1954 Code, in order to avoid the results of the Groman and Bashford decisions, the law was amended to provide that the subsidiary corporation could acquire the assets of another corporation in exchange for its parent corporation's stock (in tax-free reorganization under sec. 368(a) (1) (C)). The 1954 Code also provided that following this reorganization, the acquired assets could be transferred to a subsidiary corporation without destroying the tax-free status of the reorganization.

"Thus, the 1954 Code permits tax-free reorganizations in the case of the exchange of the parent's stock for the assets of a corporation acquired by the subsidiary. However, a similar result is denied where the subsidiary acquires the stock of the other corporation in exchange for the stock of its parent corporation. Since Congress has considered the 'continuity of interest' rule satisfied in the case of asset acquisitions, there seems to be no reason for not applying the same rule to stock acquisitions, since there is little in substance to distinguish an asset acquisition from a stock acquisition.

"As a result, your committee has concluded that it is desirable to treat these two types of acquisitions in the same manner. For that reason, it has provided tax-free status for the stock-for-stock reorganization in the same manner that present law provides a tax-free status for stock-for-asset reorganizations.
* * *"

S.Rep.No. 830, 88th Cong., 2nd Sess. 82 (1964).

Thus it is evident that *Groman* would control a triangular exchange of stock occurring—as here—prior to the 1964 amendment. Plaintiffs attempt, how-

ever, to distinguish *Groman* from the case at bar by pointing out that *Groman* involved a parent-subsidiary complex which was already set up prior to the exchange and which was on the "acquiring" side at the beginning of the transaction. This, they allege, differs from the factual pattern here, which deals with a parent-subsidiary complex on the "acquired" side at the beginning of the transaction.

This distinction is insubstantial, if not artificial, and does not warrant a departure from the result in *Groman*.

█ Here, the exchange of the twenty per cent (20%) interest in Aero Chem was conducted in two steps: first, a twenty per cent (20%) interest in Aero Chem was exchanged for Chem-Atom stock; and, second, the Chem-Atom stock was exchanged for Pfaudler stock. Nonetheless, it is necessary to view these transactions together in terms of their real purpose, with a view to their intended effect. Where several integrated steps are involved, it is the true nature and ultimate purpose of the transaction that must be determined. Furthermore, in this case both sides recognized in their briefs that the ultimate structuring of Pfaudler as parent, Chem-Atom as subsidiary and Aero Chem as sub-subsidiary was the primary goal of the parties involved in these transactions.

Thus, viewing this two-step exchange as a single transaction, the mechanics of the exchange consisted of the acquisition of the stock of a third corporation (Aero Chem) by a subsidiary (Chem-Atom) in exchange for the stock of the parent (Pfaudler). This is precisely the factual pattern found in *Groman*. Pfaudler occupies the same position as that of Glidden and, similarly, does not qualify as a "party to the reorganization" within the meaning of § 368(b).

Moreover, the language of *Groman* makes it clear that the plaintiffs' claim that these events qualify as a tax-free reorganization is also deficient because the Aero Chem shareholders cannot be regarded as retaining the requisite "continuing interest" in those transferred shares, for it was held by the Supreme Court in *Groman* (302 U.S. at p. 89, 58 S.Ct. at p. 112) as follows:

"It is argued, however, that Ohio was the alter ego of Glidden; that in truth Glidden was the principal and Ohio its agent; that we should look at the realities of the situation, disregard the corporate entity of Ohio, and treat it as Glidden. But to do so would be to ignore the purpose of the reorganization sections of the statute, which, as we have said, is that where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or different one, then to the extent, but only to the extent, of that continuity of interest, the exchange is to be treated as one not giving rise to present gain or loss * * * Was it (Glidden's stock) not 'other property' in the sense that *qua* that stock the shareholders of Indiana assumed a relation toward the conveyed assets not measured by a continued substantial interest in those assets in the ownership of Ohio, but an interest in the assets of Glidden a part of which was the common stock of Ohio? These questions we think must be answered in the affirmative."

█ Accordingly, this court holds that when the plaintiff-shareholders of Aero Chem surrendered their stock in that corporation, receiving, in effect, the stock of Pfaudler, they did not retain a continuing interest in the Aero Chem assets, but obtained, instead, an interest in a corporation which enjoyed a separate and independent existence.[2]

---

2. See, also, Hedden v. Commissioner of Internal Revenue, 105 F.2d 311 (3rd Cir.), cert. denied, 308 U.S. 575, 60 S.Ct. 116, 84 L.Ed. 482 (1939), wherein the court made it very clear that, for purposes of a tax-free reorganization, wholly-owned subsidiaries are to be recognized as entities separate and apart from the corporate parent.

For these reasons, this court concludes that the transfers in question failed to qualify as a tax-free reorganization under § 354 of the Internal Revenue Code. We need not, accordingly, pass on the additional grounds raised herein.

An appropriate order will be submitted.