Rudolph Orlob v. Commissioner. E. G. Agutter v. Commissioner. Harold F. Agutter v. Commissioner. Frank J. Kirby v. Commissioner.frank W. Squires v. Commissioner. Lewis Squires v. Commissioner. Delsa L. Williams v. Commissioner.
Orlob v. Commissioner
Docket Nos. 4507, 4571, 4572, 4573, 4574, 4575, 4576.
United States Tax Court
1945 Tax Ct. Memo LEXIS 207; 4 T.C.M. (CCH) 494; T.C.M. (RIA) 45165; May 4, 1945
*207 Petitioners owned all of the stock of Mountain States Rubber Company, which in turn owned all of the stock of Industrial Supply Company. In order to operate the companies along their own individual lines, to increase their capital and for other business reasons, both companies jointly adopted a plan of reorganization. Pursuant to the plan, Supply and Mountain States transferred to each other certain assets pertaining directly to their respective businesses; Supply amended its charter to increase its capital from 15,000 shares at $1 par value per share to 6,000 shares at $10 par value per share and changed its name to Industrial Supply Company, Inc.; Mountain States caused a new corporation, Mountain States Rubber Company, Inc., to be organized with a capital of 3,000 shares at the par value of $10 per share; Supply, Inc. issued its 6,000 shares directly to the petitioners; Mountain States, Inc. surrendered its Supply stock for cancellation; Mountain States transferred to Mountain States, Inc. all of its net assets (except Supply stock); Mountain States, Inc. issued its 3,000 shares to petitioners in the same proportions as those in which they had held Mountain States stock and now *208 hold Supply, Inc. stock; petitioners surrendered their Mountain States stock for cancellation; Mountain States was dissolved. Held, the transaction was a reorganization of the companies concerned and no gain or loss is to be recognized thereon. Section 112 (b) (3), 112 (g), 112 (h), Internal Revenue Code. Raymond R. Hails, Esq., A. L. Moreton, C.P.A., and Arthur E. Moreton, Esq., for the petitioners. E. A. Tonjes, Esq., for the *209 respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the income taxes of the petitioners for the year 1941 in the following amounts: Docket
No.
Petitioner
Amount
4507
Rudolph Orlob
$80,386.43
4571
E. G. Agutter
2,537.90
4572
Harold F. Agutter
152.12
4573
Frank J. Kirby
281.99
4574
Frank W. Squires
2,509.61
4575
Lewis Squires
310.59
4576
Delsa L. Williams
90.21
The major issue is whether or not the petitioners received taxable income upon the issuance to them of the capital stock of Industrial Supply Company, Inc., pursuant to a plan of reorganization adopted on March 31, 1941. If the petitioners received such taxable income, the following questions are presented: (1) Was the distribution to the petitioners of Industrial Supply Company, Inc. stock in final liquidation of the Mountain States Rubber Company and thus subject to tax as capital gain? (2) What was the value of such taxable dividends in relation to the undistributed profits of the Mountain States Rubber Company? (3) The correct value of the capital stock of Industrial Supply Company. Findings of Fact *210 Certain facts were stipulated. The portions thereof material to the issues are as follows: The petitioners are all individuals residing in Salt Lake County, State of Utah. Each of the petitioners filed a return for the taxable year with the collector of internal revenue for the district of Utah. Rudolph Orlob was the principal organizer and stockholder of Mountain States Rubber Company, hereinafter called Mountain States, a Utah corporation, organized January 7, 1926. He was the president and principal stockholder of that corporation until its dissolution in the calendar year 1941. The authorized capital stock of the corporation was 15,000 shares of the par value of $1 per share. On February 28, 1927, Mountain States caused the Industrial Supply Company, hereinafter called Supply, to be organized under the laws of the State of Utah, with an authorized capital stock of 15,000 shares of the par value of $1 per share. On April 1, 1927, in consideration of the issuance to it of 10,000 of such shares, Mountain States transferred to Supply the following property: Merchandise at cost
$ 7,143.86
Automobile at cost, less deprecia-
tion
223.32
Furniture and fixtures, at cost, less
depreciation
1,177.04
Cash
1,455.78
Total
$10,000.00
*211 Thereafter Mountain States owned the entire outstanding capital stock of Supply. On January 20, 1937, the remaining 5,000 shares of authorized capital stock were purchased by Mountain States for the sum of $10,000. Of this amount $5,000 was credited to capital stock outstanding and $5,000 to earned surplus on the books of Supply. No further change was made in the corporate structure of Supply or in its stock ownership, until it was recapitalized and reorganized in 1941. Rudolph Orlob was elected president of Supply upon its organization and continued to act as its president until the recapitalization hereinabove referred to. As of January 1, 1926, Rudolph Orlob transferred to Mountain States the net assets of a business then being operated by him as an individual, the cost of which assets to him was the sum of $10,098.15. He received in consideration for such transfer the entire authorized capital stock of Mountain States, consisting of 15,000 shares of the par value of $1 per share. Immediately after the issuance of such shares he sold 5,000 shares thereof to Joseph H. Oleson, and on July 25, 1929, he sold to Oleson an additional 2,000 shares of such stock. Oleson died in December *212 1937, and on June 1, 1938, Rudolph Orlob repurchased the 7,000 shares from the widow of the decedent for the sum of $4,346 per share, the book value of such stock at the close of the month preceding the death of Oleson, computed by including the earned surplus of Supply. On June 30, 1938, Rudolph Orlob sold to employees of Mountain States and Supply, at cost to him, 2,250 shares of the stock so purchased, in amounts as follows: E. G. Agutter
1,000 shares
Frank W. Squires
1,000 shares
H. F. Agutter
200 shares
Delsa Williams
50 shares
Total
2,250 shares On February 29, 1940, Rudolph Orlob sold to employees of the corporations, at $5.66 per share, the book value on December 31, 1939 (computed by including therein the earned surplus of Supply), 450 additional shares of the stock so purchased, in amounts as follows: Lewis Squires
200 shares
F. J. Kirby
200 shares
Delsa Williams
50 shares
Total
450 shares
A joint special meeting of the directors and stockholders of Mountain States and Supply was duly and regularly called and held on March 31, 1941. All of the stockholders of both companies were present in person. The stockholders were as *213 follows: Mountain States
Shares
Rudolph Orlob
12,299
Gladys Y. Orlob
1
Frank W. Squires
1,000
E. G. Agutter
1,000
H. F. Agutter
200
Frank J. Kirby
200
Lewis Squires
200
Delsa Williams
100
Total
15,000
Supply
Mountain States
14,995
Rudolph Orlob Nominees
3
Gladys Y. Orlob for Mountain
1
Frank W. Squires States
1
Total
15,000
The minutes record the following: "Comment was made by Chairman Orlob with reference to the organization by the stockholders of these companies of a new company known as Metals Supply Company, Inc., stock in said company being subscribed for by the stockholders of this company in the same proportionate number of shares as held by each of the stockholders in these corporations, and stated that in his opinion it was for the best interests of the stockholders of the Mountain States Rubber Company. Industrial Supply Company, and Metals Supply Company, Inc., and each of said companies, that their businesses, although owned by the said stockholders in the same proportionate number of shares, should be completely separated and divorced from each other, for the reason that in soliciting orders from mining companies and *214 others purchasing the products of said companies a much better chance was afforded each company to obtain its fair proportion of such business from said customers. If each of the companies were separate corporations, to the end that each might receive its fair share of business from such purchasers; because if the businesses were united and all orders placed within one company in the aggregate amount that might be given to the three, it would appear to such customers that the said consolidated company would be receiving more than its fair share of the business of said customer. "Discussion in detail was had of the said proposed plan, copy of which is hereto attached, and following such discussion F. W. Squires moved the adoption of the following resolution to put such plan into effect by both corporations: "BE IT RESOLVED: That it is for the best interests of the individual stockholders of the Mountain States Rubber Company and the Industrial Supply Company that their respective businesses be completely separated, and the capital of each of the two corporations be increased to meet our present necessities, and that each of the companies become party to a reorganization to be accomplished *215 in the following manner: "1. By the transfer by Mountain States Rubber Company of all of its stock of merchandise, book accounts, property, and assets of every kind and nature, excepting only its 100% ownership in the capital stock of Industrial Supply Company, to a successor corporation to be known as Mountain States Rubber Company, Inc., having an authorized capital of $30,000.00 (double the capital of this present company and of an amount sufficient to adequately represent the assets of this company and necessities of the business conducted by it), such company to issue stock to the stockholders of this company in the exact proportion to the amount of shares now held by the stockholders of this company in this company, and said successor corporation to assume all of the obligations of this company, and "2. That concurrently the Articles of Incorporation of the Industrial Supply Company shall be amended by adding to the title thereof the words, "Inc.", and by increasing the capital structure of said corporation from 15,000 shares of the par value of $1.00 per share to 6,000 order to increase the capital of the business of said company to meet its present necessities, and "3. *216 That concurrently and in order to accomplish the more complete separation of the businesses heretofore conducted by the Mountain States Rubber Company and the Industrial Supply Company, the capital stock of said reorganized and recapitalized Industrial Supply Company, Inc., in the said sum of $60,000.00 be issued directly to the stockholders of the present Mountain States Rubber Company in proportion to their respective holders in said latter company, and "4. That concurrently all the stockholders of the predecessor corporation, Mountain States Rubber Company, will surrender for cancellation their capital stock in said company, and Mountain States Rubber Company will surrender all of the capital stock of Industrial Supply Company to that company for cancellation, all in exchange for stock in the reorganized companies, parties to the reorganization, to be issued to the stockholders of the predecessor Mountain States Rubber Company in proportion to their stockholdings therein, and "5. That concurrently or as soon as possible, proper procedure be taken to dissolve the predecessor corporation, Mountain States Rubber Company, and "6. That the officers of each of the companies shall *217 prepare and attach to these minutes balance sheets of the corporations as follows: "(a) Mountain States Rubber Company, balance sheet at the close of business March 31, 1941, immediately prior to dissolution. "(b) Balance Sheet of its successor company, Mountain States Rubber Company, Inc., as at beginning of business, April 1, 1941. "(c) Balance sheet of Industrial Supply Company as at the close of business, March 31, 1941. "(d) Balance sheet of the reorganized Industrial Supply Company, to wit: Industrial Supply Company, Inc., at the beginning of business, April 1, 1941. "The President and Secretary of these companies are hereby authorized and directed to effectuate such plan of reorganization by the execution and filing of such papers and instruments as may be necessary to accomplish the same. "Said resolution was unanimously approved and adopted. PLAN OF REORGANIZATION MOUNTAIN STATES RUBBER COMPANY and INDUSTRIAL SUPPLY COMPANY
"It is proposed to effect a complete separation of the rubber business from the business of other industrial supplies and to increase the capital of the two businesses in order to carry the increased inventories of merchandise and increased *218 customers' accounts resulting from the steady growth of the businesses. This plan is to be carried out by the following steps (all a part of a single plan of reorganization): "(1) Industrial Supply Company will transfer at book value to Mountain States Rubber Company accounts receivable and inventory items which actually pertain to the rubber business rather than the industrial supply business. On the other hand, Mountain States Rubber Company will transfer at book value to Industrial Supply Company any such assets on its books which pertain directly to the industrial supply business rather than the rubber business. In the event the difference resulting from these transfers in favor of Industrial Supply Company, the difference shall be settled for in cash, but in the event the difference is in favor of Mountain States Rubber Company, it shall be settled through a credit to (be) paid-in surplus on the books of the Industrial Supply Company and a charge to stock investment in Industrial Supply Company on the books of the Mountain States Rubber Company. "(2) Concurrently "(a) Industrial Supply Company will amend its Articles of Incorporation to increase its authorized capital stock *219 from 15,000 shares of the par value of $1 per share to an authorized capital of 6,000 shares of the par value of $10 per share, and change its name to Industrial Supply Company, Inc.
"(b) Mountain States Rubber Company will cause to be organized a new corporation to be named Mountain States Rubber Company, Inc., with an authorized capital of 3,000 shares of the par value of $10 per share. "(3) Concurrently "(a) Recapitalized Industrial Supply Company (Industrial Supply Company, Inc.) will issue 6,000 shares of its capital stock direct to stockholders of Mountain States Rubber Company, Inc. in the ratio of 2 shares of the new stock for each 5 shares of Mountain States Rubber Company stock held. "(b) Mountain States Rubber Company will surrender the old stock of Industrial Supply Company to that company for cancellation, "(c) Mountain States Rubber Company will transfer to Mountain States Rubber Company, Inc. all of its net assets (except stock of Industrial Supply Company to be concurrently surrendered for cancellation as hereinabove set forth). "(d) Mountain States Rubber Company, Inc. will assume the liabilities of Mountain States Rubber Company and will issue 3,000 shares *220 of its capital stock as sole consideration for such net assets, the stock, however, to be issued direct to the stockholders of Mountain States Rubber Company, Inc. in the ratio of 1 share of the new stock for each 5 shares of Mountain States Rubber Company stock held, "(e) Stockholders will surrender the stock of Mountain States Rubber Company for cancellation. "(4) Mountain States Rubber Company will be legally dissolved." On March 31, 1941, the books of Mountain States and Supply reflected an indebtedness of Supply to Mountain States on open account in the amount of $11,739.88. Pursuant to the resolution of March 31, 1941, the property of Mountain States consisting of such account was transferred to Supply by forgiveness of the debt. At that time Supply extinguished the liability on its books and included the amount thereof as a part of its capital. Pursuant to the resolution of March 31, 1941, a corporation was organized under the laws of the State of Utah known as Mountain States Rubber Company, Inc., hereinafter called Mountain States, Inc., with an authorized capital of $30,000, consisting of 3,000 shares of common stock of the par value of $10 per share. Thereafter, *221 and as of March 31, 1941, Mountain States transferred all of its remaining assets, consisting of its stock of merchandise, book accounts, property and assets of every kind and nature, excepting its 100 per cent ownership in the capital stock of Supply, to Mountain States, Inc., and concurrently therewith Mountain States, Inc. issued to the stockholders of Mountain States all of its authorized capital stock as follows: Number
Par Value
of Shares
of Stock
Stockholder
Issued
Issued
Rudolph Orlob
2,459.8
$24,598.00
Gladys Y. Orlob
0.2
2.00
Frank W. Squires
200
2,000.00
E. G. Agutter
200
2,000.00
H. F. Agutter
40
400.00
Frank J. Kirby
40
400.00
Lewis Squires
40
400.00
Delsa L. Williams
20
200.00
Total
3,000
$30,000.00 Pursuant to the same resolution, the articles of incorporation of Supply were amended to change the name to Industrial Supply Company, Inc., hereinafter called Supply, Inc., and to increase the authorized capital stock of the corporation from 15,000 shares of the par value of $1 per share to 6,000 shares of the par value of $10 per share, and further, pursuant to the resolution, Mountain States surrendered to Supply, *222 Inc. its 15,000 shares of stock, of the par value of $1 per share. Such stock was cancelled and retired by Supply, Inc. Concurrently therewith Supply, Inc. issued to the stockholders of Mountain States its entire authorized capital stock of $60,000 in the following amounts: Number
Par Value
of Shares
of Stock
Stockholder
Issued
Issued
Rudolph Orlob
4,919.6
$49,196.00
Gladys Y. Orlob
0.4
4.00
Frank W. Squires
400
4,000.00
E. G. Agutter
400
4,000.00
H. F. Agutter
80
800.00
Frank J. Kirby
80
800.00
Lewis Squires
80
800.00
Delsa L. Williams
40
400.00
Total
6,000
$60,000.00
Also pursuant to the resolution, and concurrently with the issuance to them of the stock of Mountain States, Inc. and Supply, Inc., the stockholders of Mountain States surrendered to Mountain States for cancellation the stock theretofore held by them in that corporation in the aggregate par value of $15,000, as follows: Number of
Aggregate
Stockholder
Shares
Par Value
Rudolph Orlob
12,299
$12,299.00
Gladys Y. Orlob
1
1.00
Frank W. Squires
1,000
1,000.00
E. G. Agutter
1,000
1,000.00
H. F. Agutter
200
200.00
Frank J. Kirby
200
200.00
Lewis Squires
200
200.00
Delsa L. Williams
100
100.00
Total
15,000
$15,000.00
*223 The stock so surrendered to Mountain States by its stockholders was cancelled and retired and that corporation was forthwith dissolved pursuant to the laws of the State of Utah. The undistributed net profits of Mountain States on March 31, 1941, immediately prior to the transactions made pursuant to the resolution of that date, amounted to $42,555.21. The undistributed net profits of Mountain States on March 31, 1927, were $3,941.82 and on December 31, 1936, were $21,987.61. No sales or exchanges of stock of Mountain States were made after February 29, 1940, and no sales or exchanges of stock of either Mountain States, Inc. or Supply, Inc. were made after April 1, 1941, until February 23, 1943, when 80 shares of Supply, Inc. stock and 40 shares of Mountain States, Inc. stock were sold by Lewis Squires, who was then retiring from the business, to E. G. Agutter, at the then book value of such stock. The balance sheets of the two companies as of March 31, 1941, were as follows: Mountain
States
Industrial
Rubber
Supply
Assets
Company
Company
Current Assets: Cash in Bank
$ 4,910.23
$ 9,032.05
Cash on Hand
14.63
36.54
Accts. Receivable
19,119.31
39,382.97
Mdse. Inventory
13,092.84
38,371.29
Notes Receivable
.00
12,369.04
$37,137.01
$ 99,191.89
Fixed Assets: Auto
$ 370.78
$ 1,043.65
Furniture & Fixtures
706.57
535.71
Bonds - Other Co's.
500.00
100.00
Stock, Ind. Sup. Co.
31,739.88
.00
$33,317.23
$ 1,679.36
Total Assets
$70,454.24
$100,871.25
Liabilities
Current Liabilities: Accounts Payable
$15,488.87
$ 13,327.42
Reserve for Taxes
1,685.82
1,975.43
Notes Payable
.00
2,000.00
$17,174.69
$ 17,302.85
Capital: Capital Stock
$15,000.00
$ 15,000.00
Earned Surplus
38,279.55 *
51,828.52
Paid in Surplus
.00
16,739.88
$53,279.55
$ 83,568.40
Total Liabilities
and Capital
$70,454.24
$100,871.25
*224 The record discloses the following additional facts: The petitioner, Orlob, established the business of Mountain States and incorporated it in 1926. Originally it engaged exclusively in selling mechanical rubber goods, hose, belting, packing, and in distributing tires. The company was encountering factory competition in such articles and hence added to its lines industrial supplies, such as Simonds' saws, Whitman & Barnes' twist drills, other tools, fire extinguishers and machinery. Mountain States abandoned its tire business 12 or more years ago because of continued oppressive factory competition and other "cut throat" practices becoming common in the trade. It retained its mechanical rubber goods business, which gradually became hazardous due to the prevalence of the same trade practices as those developed in distributing tires. In 1940 and 1941, due to Government requirements of rubber, Mountain States had great difficulty in securing supplies. There is a high rate of deterioration and change of design in the rubber business. Supply was formed to operate the industrial supply *225 business of Mountain States. Supply grew more rapidly than Mountain States and hence it required additional capital to assume the distribution for several large manufacturers not adequately represented in the territory. The business of Supply was also quite hazardous. In 1941 the situation was particularly uncertain due to war conditions, which reduced its manpower and manufactured goods. If the manufacturer decides to establish branch office in the territory, the distributor's business is seriously impaired. The manufacturer makes no contracts not subject to cancellation. Furthermore, the business of Mountain States and Supply was built around Orlob, who established contacts with eastern factories and maintained friendships and business associations with Salt Lake City firms. Joseph H. Oleson was associated with Orlob in the enterprise for about 18 years. He had charge of the sales of industrial supply goods, in which he specialized. Upon his death, Orlob assumed Oleson's duties and devoted more than 75 per cent of his time to such work. In 1940 the outlook for the rubber company was bad, due to the outbreak of the war and inability to obtain deliveries. The financial condition *226 of Supply was good and its prospects promising. Certain of the employees were inclined to the rubber goods business while others seemed to prefer the industrial supply activities. Orlob desired to develop the employees in that part of the business to which they were best adapted and to enable them to acquire stock in the company engaged therein. Hence he and the other stockholders desided to separate the activities of the companies. They also did not want Supply to be carried down if Mountain States, the weaker company, should fail. Orlob then consulted his attorney, who formulated the plan of separation and reorganization. In the statement accompanying his notice of deficiency directed to Rudolph Orlob, the respondent appended the following explanation: "It is held that the transaction whereby you received, during the taxable year, 4,920 shares of the capital stock of the Industrial Supply Company, Inc. (including a 4/10 share issued in the name of your wife, Gladys J. Orlob, who did not file a return), was in substance and effect a distribution to you of a taxable dividend to the extent of the then market value of such capital stock. Section 115 of the Internal Revenue Code *227 . It is held further that the value of the capital stock of the said Industrial Supply Company, Inc. at the date of its distribution to you was $25.39148 per share. Accordingly, there has been included in your taxable income the amount of $124,926.08 as representing the total amount of the taxable dividend received by you in capital stock of the Industrial Supply Company, Inc." Similar explanations were made in the notices of deficiencies sent to the other petitioners, varying only in the number of shares and the calculations based thereon. Opinion VAN FOSSAN, Judge: The petitioners contend that the transaction of March 31, 1941, was a statutory reorganization falling within the scope of sections 112 (b) (3), 112 (g) and 112 (h) of the Internal Revenue Code[1] and that therefore no taxable gain or loss was recognized thereon. *228 The respondent concedes that, as to Mountain States and Mountain States, Inc., a reorganization took place (section 112 (g) (1) (D)) and that Supply and Supply, Inc. effected a reorganization under section 112 (g) (1) (E), but he argues "that there was a 'plan' is apparent; and while both corporations were, literally, 'parties to that plan', nevertheless the respondent submits that both corporations were not parties to the same reorganization within the statutory concept of 'a party to the reorganization.'" Thus the issue is narrowed to whether or not Supply (transformed into Supply, Inc.) was a party to the reorganization actually as well as "literally" - to use the respondent's own descriptive word. The respondent cites and relies upon Groman v. Commissioner, 302 U.S. 82 (82 L. Ed. 63). In that case the facts were not similar to those in the case at bar. There, the Glidden Company, so the Court held, served in the capacity of a financial backer or banker of the Ohio company and was "no more than the efficient agent in bringing about a reorganization." Here, Supply and Mountain States were jointly interested in the transaction. One could not play its part without *229 the other. They exchanged assets to further the plan, which was of benefit to both corporations, and was formulated and consummated for proper, sound and legitimate business purposes. Each contributed an integral part to the accomplishment of the plan. The respondent argues further that the same result could have been reached by the declaration by Mountain States of a taxable dividend in the form of the stock of Supply and concludes that the plan of reorganization, as adopted, was designed solely for the purpose of avoiding tax liability. It is now axiomatic that a taxpayer may choose the method of accomplishing a desired result which involves the least tax liability, provided, of course, that it is prompted by proper and legitimate business purposes. We have no doubt of the genuineness of the reasons impelling Mountain States and Supply to effectuate the reorganization. In support of their position the petitioners cite Helvering v. Leary, 93 Fed. (2d) 826; Helvering v. Schoellkopf, 100 Fed. (2d) 415; Commissioner v. Kolb, 100 Fed. (2d) 920; Commissioner v. Whitaker, 101 Fed. (2d) 640, and Commissioner v. Food Industries, Inc., 101 Fed. (2d) 748. *230 These cases were decided by the Circuit Courts of Appeal of the Fourth, Second, Ninth, First and Third Circuits, respectively and all relate to the reorganization of the General Baking Corporation, a Maryland corporation, and the General Baking Company, a New York corporation. The taxpayers were the stockholders of the Maryland company, which held practically all of the common stock of the New York company. The officers of both companies decided to eliminate the Maryland company and have the common stock of the New York company held directly by the stockholders of the Maryland company. They adopted a plan of reorganization to that end. The Maryland company transferred to the New York company substantially all of its assets, including its principal asset, the stock of the New York company. The stockholders of the Maryland company surrendered their stock in that company and received in exchange stock in the New York company, its bonds and a small amount of cash. The Maryland company was dissolved and the New York company continued the operation of the business. To facilitate the exchange, the New York company increased the number of its shares and changed their par value. In all cases, *231 the Board of Tax Appeals held that the transaction was within the statutory definition of a reorganization and that hence the recognition of taxable gain therefrom was precluded. The Circuit Courts of Appeal sustained the Board. The situation before us is precisely analogous in principle to the cases just cited. See also Elmer G. Biechler, 40 B.T.A. 184. Here, the stock of Supply was an asset of Mountain States. Commissioner v. Food Industries, Inc., supra. Mountain States transferred that asset to Supply, Inc., the same corporation with a change of name and of capital, and thereupon Supply, Inc. issued its stock to the petitioners, the stockholders of Mountain States, Inc., who were also the stockholders of Mountain States, and who thereby became the controlling stockholders of Supply, Inc. The terms of section 112 (g) (1) (D) are met and thus there is no recognition of gain or loss. In Helvering v. Schoellkopf, supra, the Court, discussing the liquidation of one company in connection with the reorganization, said: Nor can we say that it was only a device to escape taxation, assuming that that would be relevant anyway; so far as appears, the transfer of *232 the miscellaneous assets to the New York company was not interjected for other than business reasons. It is indeed somewhat startling to conclude that the taxability of the transaction depends upon such a trivial incident, but that cannot be a determining consideration. If for example the holding company had held large properties, but had wishes to dissolve, we should have no reluctance in reaching the same result. There would then have been an indubitable reorganization, coupled with a liquidation; and the old owners - then shareholders of the subsidiary - would simply be holding all the assets directly instead of holding some part of them through the parent's ownership of the subsidiary's shares. Such a change was within the intent of Congress * * *. See Commissioner v. Kolb, supra. This observation applies directly to the facts before us. Before the reorganization the petitioners, as the stockholders of Mountain States, held assets of Supply through its ownership of Supply stock. Now the petitioners hold the same assets directly through their ownership of Supply, Inc. stock. Clyde Bacon, Inc., 4 T.C. 1107. The issuance of the stock to the petitioners *233 was in pursuance of the plan of reorganization. Milton Smith, 34 B.T.A. 702. Under the authority of the General Baking Company cases we hold that Supply was a party to the reorganization under the statutory conception of that term and that the transaction met the requirements of the statute governing reorganization. Section 112 (b) (3), I.R.C. See also Elmer G. Biechler, supra. Therefore, no gain or loss thereon can be recognized. In view of our decision on the major issue, it is unnecessary to discuss the subordinate issues. Decisions will be entered under Rule 50. Footnotes
*. Before additional 1941 Federal income and declared value excess profits taxes of $626.19.↩
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. (a) General Rule. - Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section. (b) Exchanges Solely in Kind. - * * * * *
(3) Stock for Stock on Reorganization. - No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * * * *
(g) Definition of Reorganization. - As used in this section (other than subsection (b) (10) and subsection (1) and in section 113 (other than subsection (a) (22)) - (1) The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation, or (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded, or (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, or (E) a recapitalization, or (F) a mere change in identity, form, or place of organization, however effected. (2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another. (h) Definition of Control. - As used in this section the term 'control' means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.↩